IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLEAN AIR COUNCIL, | ) |
| *Plaintiff,* | ) ) ) CIVIL ACTION NO. _____19-1072_____ |
| v. | ) ) |
| UNITED STATES STEEL CORPORATION, | ) ) |
| *Defendant.* | ) ) |

## COMPLAINT

1. Clean Air Council ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against United States Steel Corporation ("U.S. Steel" or "Defendant") for significant and ongoing violations of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, due to Defendant's failure to report unpermitted releases of hazardous substances—including hydrogen sulfide, benzene, and coke oven emissions—from three of Defendant's Mon Valley Works facilities to the National Response Center.

2. Defendant owns and operates the Mon Valley Works, a steelmaking operation that includes three facilities in Allegheny County, Pennsylvania. The Mon Valley Works facilities include: the Clairton Plant, located at 400 State Street, Clairton, Pennsylvania 15025-1855, at which coke is produced; the Edgar Thomson Plant, located at 1300 Braddock Ave, Braddock, Pennsylvania 15104-1743, at which that coke and its byproducts are used to produce steel slabs; and the Irvin Plant, located at Camp Hollow Road, West Mifflin, Pennsylvania 15122, at which finishing processes on those slabs are performed. The Clairton Plant is the

1

largest coke manufacturing facility in the United States. Coke oven gas produced at the Clairton Plant is transported by pipeline for use at the Irvin Plant and Edgar Thomson Plant.

3. CERCLA requires any person in charge of a facility to immediately notify the National Response Center as soon as the person has knowledge of any release (other than a federally permitted release) of a hazardous substance in a quantity greater than the reportable quantity for that substance. 42 U.S.C. § 9603(a).

4. On December 24, 2018, a fire at the Clairton Plant caused the shutdown of the No. 2 and No. 5 Control Rooms, which process coke oven gas to remove light oil—consisting of benzene and other volatile organic compounds—and sulfur, respectively.

5. U.S. Steel continued to operate the Clairton Plant's coke oven batteries despite the shutdown of those control rooms. As a result, U.S. Steel generated and used unprocessed coke oven gas as fuel at the Clairton Plant. U.S. Steel also sent this unprocessed coke oven gas to the Edgar Thomson and Irvin Plants for combustion and use as fuel. Because this coke oven gas was unprocessed, it contained high levels of hydrogen sulfide, benzene, and other pollutants when it was used as fuel and otherwise combusted.

6. Through these actions, U.S. Steel released hazardous substances, including hydrogen sulfide, benzene, and coke oven emissions, in quantities exceeding the reportable quantities under 40 C.F.R. § 302.4, Tbl. 302.4.

7. U.S. Steel has not reported these releases to the National Response Center as required by section 103(a) of CERCLA. As of the date of this Complaint, there are no reports from U.S. Steel regarding these releases of hazardous substances.

8. U.S. Steel has subsequently failed to report at least one other unpermitted release exceeding the reportable quantity to the National Response Center.

9.  Plaintiff is filing this Complaint because Defendant's violations of CERCLA are significant, ongoing, and likely to recur without the relief requested from this Court.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 9659(a) (authorizing citizens' suits under CERCLA) and 28 U.S.C. § 1331 (federal question jurisdiction).

11. Pursuant to 42 U.S.C. § 9659(b), venue in this Court is proper because the CERCLA violations alleged in this Complaint occurred and are occurring in this District.

12. This Court may award Plaintiff all necessary relief pursuant to 42 U.S.C. § 9659(c) and 28 U.S.C. §§ 2201-2202.

13. Pursuant to section 310 of CERCLA and relevant regulations, Plaintiff provided more than sixty days' notice in a letter dated May 2, 2019 ("Notice Letter"), in the form and manner required by CERCLA to all required recipients, including: U.S. Steel, the Pennsylvania Attorney General, the United States Environmental Protection Agency ("EPA") Administrator, EPA Region III's Administrator, and the United States Department of Justice. *See* 42 U.S.C. § 9659(d)(1); 40 C.F.R. § 374.2(a)(1); Notice Letter, attached hereto as Exhibit 1 and incorporated herein by reference; U.S. Postal Service Return Receipts, attached hereto as Exhibit 2.

14. Neither EPA nor the Commonwealth of Pennsylvania has commenced or is diligently prosecuting a civil or criminal action against U.S. Steel under CERCLA or the Solid Waste Disposal Act to require compliance with the CERCLA standard, regulation, condition, requirement, or order concerned (including any provision of an agreement under section 9620 of CERCLA). *See* 42 U.S.C. § 9659(d)(2); 40 C.F.R. § 374.4(a).

15. U.S. Steel has released hazardous substances at levels exceeding the reportable quantity threshold for those hazardous substances, and it has failed to report those releases as required by CERCLA, despite knowledge of those releases. The violations alleged herein are significant, ongoing, and are likely to recur until this Court orders U.S. Steel to comply with the law and grants other appropriate relief.

## PARTIES

The Plaintiff

16. Plaintiff Clean Air Council is a nonprofit Pennsylvania corporation with 37,000 members, including members in Allegheny County. Clean Air Council's mission is to protect and defend the right to a healthy environment through sustainability and public health initiatives, using public education, community action, government oversight, and enforcement of environmental laws.

17. Plaintiff brings this action on behalf of itself and its members.

18. The interests that Plaintiff seeks to protect are germane to its purposes.

19. Neither the claims asserted nor the relief requested requires the participation of Plaintiff's individual members in this action.

20. Plaintiff's members include individuals who are harmed by and reasonably fear the environmental and health risks of hazardous substances released by the Mon Valley Works facilities in their communities. Plaintiff's members include individuals who have encountered these hazardous substances from releases from these facilities in the past and/or fear that they will encounter these chemicals in the future through releases into the ambient air.

21. Without the required reporting by U.S. Steel to the National Response Center, Plaintiff's members lack needed information regarding these hazardous substances and their

releases that is not otherwise publicly available. Without this information, Plaintiff's members cannot adequately protect themselves from exposure or make informed decisions to plan for their health, families, futures, and communities.

22.     U.S. Steel's failure to report as required has also made it more difficult for Plaintiff to achieve its organizational objectives to protect its members, the public, and the environment from the risks of hazardous substances and to inform its members, the public, and decision makers about these risks.

23.     On several occasions, Plaintiff sought to partially remedy or mitigate these injuries by attempting to obtain information regarding U.S. Steel's releases of hazardous substances from public databases or through other sources. Plaintiff also requested this data from U.S. Steel, but U.S. Steel did not provide it. Thus, despite Plaintiff's efforts, Plaintiff has not been able to obtain the information that U.S. Steel was required to report to the National Response Center.

24.     Plaintiff's injuries would be redressed by (a) a declaratory judgment that U.S. Steel has violated the reporting requirements of CERCLA; (b) an order compelling U.S. Steel to come into compliance with CERCLA by reporting to the National Response Center all releases of hydrogen sulfide, benzene, coke oven emissions, and other hazardous substances exceeding reportable quantities from its three Mon Valley Works facilities between December 24, 2018, and April 4, 2019, and all such releases since that time; (c) an injunction prohibiting U.S. Steel from continuing to violate CERCLA in the future; (d) the assessment of civil penalties against U.S. Steel; and (e) all other relief requested in Plaintiff's Prayer for Relief.

The Defendant

25. Defendant U.S. Steel is a publicly-traded corporation with headquarters in Pittsburgh, Pennsylvania, and it is the legal owner and operator of the Clairton, Irvin, and Edgar Thomson Plants, known collectively as the Mon Valley Works.

26. U.S. Steel is in control of the day-to-day operations of each of the three Mon Valley Works facilities.

27. U.S. Steel is a "person" as defined by CERCLA and is responsible for the violations alleged herein.

## LEGAL REQUIREMENTS

28. Section 103(a) of CERCLA requires that "any person in charge of a . . . facility shall, as soon as he has knowledge of any release (other than a federally permitted release) of a hazardous substance from such . . . facility in quantities equal to or greater than those determined pursuant to section 9602 of this title, immediately notify the National Response Center established under the Clean Water Act [33 U.S.C. § 1251 et seq.] of such release." 42 U.S.C. § 9603(a).

29. Under CERCLA, "person" means "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21).

30. CERCLA defines "facility" as "any building structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft," as well as "any site or area where hazardous substance has been deposited, stored,

disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel." 42 U.S.C. § 9601(9).

31. "Release" means "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)." 42 U.S.C. § 9601(22).

32. "Environment" is defined as "the navigable waters, the waters of the contiguous zone, and the ocean waters," and "any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States." 42 U.S.C. § 9601(8).

33. "Federally permitted release," in relevant part, includes "any emission into the air subject to a permit or control regulation under section 111, section 112, Title I part C, Title I part D, or State implementation plans submitted in accordance with section 110 of the Clean Air Act . . . including any schedule or waiver granted, promulgated, or approved under these sections." 42 U.S.C. § 9601(10)(h) (internal citations omitted).

34. The federally permitted release exception is an affirmative defense for which the person in charge carries the burden of proof.

35. The reportable quantity for hydrogen sulfide is 100 pounds, the reportable quantity for benzene is 10 pounds, and the reportable quantity for coke oven emissions is 1 pound. *See* 40 C.F.R. § 302.4, Tbl. 302.4.

36. Under section 310 of CERCLA, "any person may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this

chapter." 42 U.S.C. § 9659(a). Prior to the commencement of the citizen suit, the potential plaintiff must provide notice of sixty days to the alleged violator, the government of the state in which the violation occurs, and EPA. 42 U.S.C. § 9659(d)(1).

37. Section 109 of CERCLA, as adjusted by the Civil Monetary Penalty Inflation Adjustment Rule, authorizes penalties of $55,907 per day for violations of CERCLA section 103(a) occurring before January 15, 2019, and $57,317 per day for violations on or after January 15, 2019. *See* 42 U.S.C. § 9609(b); 40 C.F.R. § 19.4, Tbl. 2; 84 Fed. Reg. 2,058, 2,059 (Feb. 6, 2019).

## FACTUAL BACKGROUND

38. The Clairton Plant is the largest byproducts coke plant in North America. It operates ten coke batteries and produces approximately 10,000 tons of coke per day from the destructive distillation of more than 16,000 tons of coal. The coke produced is used in the blast furnace operations in the production of molten iron for steel making. The process of creating the coke produces approximately 215 million cubic feet of coke oven gas per day. The coke oven gas is used as fuel for processes across the three Mon Valley Works facilities. *See* Allegheny County Health Dep't (ACHD), Enforcement Order No. 190202, at 1-2 (Feb. 28, 2019) [hereinafter ACHD Order], attached hereto as Exhibit 3.

39. Under normal operations, the Clairton Plant processes this coke oven gas before its use as fuel gas through the No. 2 Control Room, which removes light oil, consisting of benzene and other volatile organic compounds, and the No. 5 Control Room, which removes sulfur from the coke oven gas. *See* Letter from Michael S. Rhoads, U.S. Steel, to Jayme Graham, ACHD, at 2 (Jan. 7, 2019) [hereinafter Jan. 7 Letter], attached hereto as Exhibit 4.

40. The Irvin Plant is a secondary steel processing facility. It receives steel slabs and performs one of several finishing processes on those slabs. The facility includes four coke oven gas flares and four natural gas-/coke oven gas-fired boilers. ACHD, Title V Operating Permit & Federally Enforceable State Operating Permit, Permit No. 0050, at 4 (Dec. 9, 2016).

41. The Edgar Thomson Plant is an iron and steel-making facility that primarily produces steel slabs from raw materials such as coke, iron-bearing materials, and fluxes. There are three Riley boilers at the Edgar Thomson Plant, which are used to generate steam, heat, and electricity for the plant. The three primary fuels for these boilers are blast furnace gases, coke oven gas, and natural gas. *See* ACHD, Major Source Operating Permit, Permit No. 0051, at 4 (Apr. 13, 2016).

42. At approximately 4:30 a.m. on December 24, 2018, a fire occurred at the Clairton Plant in the No. 2 Control Room. This fire resulted in the shutdown of the No. 2 and No. 5 Control Rooms. *See* Jan. 7 Letter, Ex. 4, at 1.

43. As a result of U.S. Steel's continued operation of the Clairton Plant without the byproducts removal and processing provided by these control rooms, U.S. Steel combusted unprocessed coke oven gas as fuel or through flares at the Clairton Plant, the Edgar Thomson Plant, and the Irvin Plant.

44. This continued operation caused releases of coke oven gas, hydrogen sulfide, benzene, and other hazardous components into the ambient air from all three plants from December 24, 2018, until April 4, 2019, or approximately 102 days. *See* Notice Letter, Ex. 1, at 5.

45. Based on U.S. Steel's reported figures for sulfur dioxide emissions and coal charged during this time period, EPA emission estimation methodologies, and reasonable

inferences, each of U.S. Steel's three Mon Valley Works facilities released one or more hazardous substances into the ambient air in excess of the reportable quantities, including hydrogen sulfide, benzene, and coke oven emissions.[1] *See* Notice Letter, Ex. 1, at 6-10.

46. In an enforcement order dated February 28, 2019, ACHD reported that across all three Mon Valley Works facilities, U.S. Steel estimated total emissions of 74,099.81 pounds of sulfur dioxide on January 29, 2019. *See* ACHD Order, Ex. 3, at 4-5.

47. Of the total 74,099.81 pounds of sulfur dioxide emissions, U.S. Steel attributed 26,979.64 pounds to the Clairton Plant, 42,514.19 pounds to the Irvin Plant, and 4,605.98 pounds to the Edgar Thomson Plant. *Id.*; *see also* Notice Letter, Ex. 1, at 6.

48. Based on more detailed reporting of the three facilities' daily sulfur dioxide emissions between December 24, 2018, and March 16, 2019, which U.S. Steel submitted to ACHD after the enforcement order, the emissions on January 29, 2019, are representative of—if not generally lower than—the three facilities' daily emissions of sulfur dioxide during this period. *See* Mon Valley Works Data, attached hereto as Exhibit 5.

49. On information and reasonable inferences from information reported by U.S. Steel to ACHD, at least the Clairton Plant and the Irvin Plant released hydrogen sulfide in excess of the 100-pound-per-day reportable quantity. *See* Notice Letter, Ex. 1, at 6-7.

50. Based on U.S. Steel's sulfur dioxide emissions from January 29, 2019, and Plaintiff's calculations using molecular balance and a conservatively assumed destruction

---

[1] Sulfur dioxide is not a hazardous substance with a reportable quantity under CERCLA, but, as provided herein and in the Notice Letter, Plaintiff has used U.S. Steel's reported emissions of sulfur dioxide to calculate the three Mon Valley Works facilities' releases of hazardous substances with reportable quantities under CERCLA, including hydrogen sulfide and benzene. *See* Notice Letter, Ex. 1, at 6-10.

efficiency of 99 percent, the Mon Valley Works facilities' combustion of the unprocessed coke oven gas collectively released at least 398.18 pounds per day of hydrogen sulfide. *See id.* at 7.

51. Based on U.S. Steel's attribution of the January 29, 2019 sulfur dioxide emissions to the three Mon Valley Works facilities, the Clairton Plant released approximately 144.78 pounds of hydrogen sulfide per day, the Irvin Plant released approximately 228.14 pounds of hydrogen sulfide per day, and the Edgar Thomson Plant released approximately 24.72 pounds of hydrogen sulfide per day. *See id.*; ACHD Order, Ex. 3, at 5.

52. On information and reasonable inferences from information reported to ACHD by U.S. Steel, each of the Mon Valley Works facilities released benzene in excess of the ten-pound reportable quantity. *See* Notice Letter, Ex. 1, at 7-9.

53. Based on application of EPA's AP-42 emissions factors for bypassed coke oven gas, and considering ACHD's estimate of the Clairton Plant's "destructive distillation (carbonization) of more than 16,000 tons of coal" per day, the Mon Valley Works facilities' flaring and combustion of the unprocessed coke oven gas released approximately 3,520 pounds of benzene per day. *See id.* at 8; ACHD Order, Ex. 3, at 1-2.

54. Applying these same AP-42 emissions factors for bypassed coke oven gas to U.S. Steel's monthly reporting of actual coal the Clairton Plant charged in January and February 2019—13,311 tons and 13,043 tons of coal per day, respectively—provides a similar estimated release of benzene above the reportable quantity. Under this calculation, the Mon Valley Works facilities' flaring and combustion of the unprocessed coke oven gas collectively released approximately 2,928.4 pounds of benzene per day in January 2019 and 2,869.5 pounds of benzene per day in February 2019. *See* Notice Letter, Ex. 1, at 8-9.

55. Applying these same AP-42 emissions factors for bypassed coke oven gas as a ratio to the facilities' reported emissions of sulfur dioxide also provides an estimated release of benzene above the reportable quantity. Using the ratio of 0.22 pounds of benzene to 13 pounds of sulfur dioxide and U.S. Steel's reported sulfur dioxide emissions on January 29, 2019, the Mon Valley Works facilities collectively released approximately 1,254 pounds of benzene per day, or 457 pounds of benzene per day from the Clairton Plant, 719 pounds of benzene per day from the Irvin Plant, and 78 pounds of benzene per day from the Edgar Thomson Plant. *See id.* at 9.

56. On information and reasonable inferences from information reported to ACHD by U.S. Steel and the calculation methods used herein, each of the Mon Valley Works facilities released coke oven emissions in amounts greater than the reportable quantity of one pound per day. *See id.* at 9-10.

57. The Mon Valley Works facilities' releases of these hazardous substances were not federally permitted releases, as that term is defined in 42 U.S.C. § 9601(10)(h). *See id.* at 10-11.

58. U.S. Steel failed to make a single report to the National Response Center regarding releases of any of these three hazardous substances from any of the three Mon Valley Works facilities—or any other hazardous substance from any of these facilities—during this 102-day period.

59. As of the date of this complaint, the National Response Center database does not contain any reports from U.S. Steel regarding these releases. *See* U.S. Coast Guard, National Response Center, 2019 Reports, *available at* http://nrc.uscg.mil/ (accessed Aug. 23, 2019).

60. While there are four reports to the National Response Center regarding the Mon Valley Works facilities after the date of the fire, none is a report by U.S. Steel pertaining to the releases described herein.

61. Three of these reports pertain to other releases. One report, dated February 4, 2019 (identified as no. 1236736), reported a discharge of light oil onto the ground due to unknown causes. Two reports, dated May 17 and June 5, 2019 (identified as nos. 1246004 and 1247909), reported incidents occurring after the 102-day period of releases described herein.

62. One report, dated March 15, 2019 (identified as no. 1240193), pertains to the releases described herein, but was made by a concerned citizen and not by U.S. Steel.

63. The March 15, 2019 report by a concerned citizen does not satisfy U.S. Steel's statutory obligation to report its own releases.

64. On June 16, 2019, U.S. Steel reported a second fire to ACHD. Like the first fire, this fire resulted in the shutdown of the Nos. 2 and 5 Control Rooms.

65. Again, U.S. Steel continued to operate the Clairton Plant's coke oven batteries despite the shutdown of the control rooms, and the unprocessed coke oven gas was used for fuel, flaring, and other combustion at the three Mon Valley Works facilities. *See* ACHD, Emergency Order # 190603 (June 17, 2019), attached hereto as Exhibit 6.

66. To date, U.S. Steel has made no report to the National Response Center regarding releases from the June 16, 2019 incident.

67. On July 5, 2019, an air monitor in Glassport recorded high benzene levels at around the same time that cameras recorded significant flaring at the Irvin Plant.

68. On information and belief, and based on these levels and the extent of the flaring, U.S. Steel released hazardous substances above reportable quantities.

69. To date, U.S. Steel has made no report to the National Response Center regarding releases from the July 5, 2019 incident.

70. Benzene is a known carcinogen by all routes of exposure, and long-term exposure to benzene can cause leukemia—cancer of the blood-forming organs. Exposure to benzene is also associated with a number of other health effects, including blood disorders such as pre-leukemia and aplastic anemia.

71. Hydrogen sulfide is a colorless and flammable gas that can cause a number of effects at low concentrations, including eye, nose and throat irritation, difficulty breathing in people with asthma, headaches, poor memory, tiredness, and balance problems. At very high concentrations, it can cause problems breathing and loss of consciousness.

72. Coke oven emissions are a known carcinogen, exposure to which has shown an increased risk of mortality from cancer of the lung, trachea, bronchus, kidney, prostate, and cancer, at all sites combined.

## CAUSE OF ACTION

### VIOLATIONS OF 42 U.S.C. § 9603(a)
**(Failure to Report Releases of Hazardous Substances to the National Response Center)**

73. Each paragraph alleged above is incorporated by reference herein as if restated in full.

74. Section 103(a) of CERCLA requires that any person in charge of a facility shall, as soon as he has knowledge of a release of a hazardous substance from such facility in quantities equal or greater to those listed in 40 C.F.R. § 304.2, notify the National Response Center.

75. Benzene, hydrogen sulfide, and coke oven emissions are "hazardous substances," as that term is defined by CERCLA. *See* 42 U.S.C. § 9601(14); 40 C.F.R. § 302.4, Tbl. 302.4.

76. U.S. Steel is a "person" as that term is defined by CERCLA. *See* 42 U.S.C. § 9601(21).

77. Each of the three Mon Valley Works facilities—the Clairton, Irvin, and Edgar Thomson Plants—is a "facility" as that term is defined by CERCLA. 42 U.S.C. § 9601(9).

78. U.S. Steel, or its representative, is a "person in charge" of these facilities.

79. U.S. Steel's three Mon Valley Works facilities each released hazardous substances to the ambient air, including hydrogen sulfide, benzene, and coke oven emissions.

80. These releases exceeded the reportable quantities for those hazardous substances.

81. These releases of hazardous substances were not federally permitted releases, as that term is defined in 42 U.S.C. § 9601(10)(h).

82. The federally permitted release exception is an affirmative defense for which the person in charge carries the burden of proof.

83. U.S. Steel had knowledge of these releases, as evidenced by its reporting to ACHD.

84. U.S. Steel did not report any of these releases to the National Response Center.

85. U.S. Steel's failure to report these releases is ongoing.

86. Each 24-hour period within which a reportable quantity of any hazardous substance was released requires a separate report. Each 24-hour period during which U.S. Steel failed to report a release of each of these substances above reportable quantities constitutes a separate violation of CERCLA.

87. U.S. Steel has violated section 103(a) of CERCLA as many as 918 times by failing to report the releases of each of these three hazardous substances from each of its three facilities for each of the 102 days in which it continued to operate the Clairton Plant's coke oven batteries without control equipment.

88. U.S. Steel also failed to report to the National Response Center subsequent releases of hazardous substances that occurred since that time, including the releases resulting from the incidents on June 16 and July 5, 2019.

89. U.S. Steel's continued failure to report subsequent releases demonstrates that such violations are likely to recur.

90. Each of U.S. Steel's violations is subject to a civil penalty of up to $55,907 per day for violations before January 15, 2019, and $57,317 per day for violations on or after January 15, 2019. *See* 42 U.S.C. § 9609(b); 40 C.F.R. § 19.4, Tbl. 2; 84 Fed. Reg. 2,058, 2,059 (Feb. 6, 2019).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that U.S. Steel is in violation of CERCLA by failing to report releases of hazardous substances above reportable quantities from its three Mon Valley Works facilities to the National Response Center;

B. Order U.S. Steel to immediately comply with CERCLA by reporting all releases of hazardous substances above reportable quantities to the National Response Center;

C. Enjoin U.S. Steel from further violating CERCLA by requiring U.S. Steel to report all future releases of hazardous substances above reportable quantities to the National Response Center;

D. Assess civil penalties against U.S. Steel;

E. Award Plaintiff the cost of litigation, including reasonable attorneys' fees, costs, and expert fees and expenses;

F. Retain jurisdiction to ensure U.S. Steel's compliance with the Court's decree; and

G. Grant Plaintiff such other relief as the Court deems just and proper.

                                                Respectfully submitted,

Date: __August 26, 2019_____        ___/s/ Lisa Hallowell_____

                                                Lisa Widawsky Hallowell
                                                Bar ID No. PA 207983
                                                Environmental Integrity Project
                                                1000 Vermont Avenue, NW, Suite 1100
                                                Washington, DC 20005
                                                Telephone: (202) 294-3282
                                                Fax: (202) 296-8822
                                                lhallowell@environmentalintegrity.org

                                                *Attorney for Plaintiff Clean Air Council*